1

2

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3

4

Hakkasan LV, LLC, et al.,

          Plaintiffs,

No: 2:15-cv-290-JAD-PAL

5

6

vs.

Eddie Miller,

**Order Denying *Ex Parte* Application for Temporary Restraining Order [Doc. 4] and Motion for Preliminary Injunction [Doc. 6]**

7

          Defendant.

8

9

10

11

12

13

14

     Plaintiffs Hakkasan LV LLC and its parent company Hakkasan Limited (collectively, Hakkasan)[1] seek an *ex parte* temporary restraining order and a preliminary injunction against defendant Eddie Miller, who they claim has registered several web domain names similar to those used by Hakkasan, and offered them for sale.  Docs. 4, 6.[2]  But Hakkasan's evidentiary proffer fails to show any irreparable injury cognizable under recent Ninth Circuit guidance and, thus, I deny both motions.

15

## Background

16

17

18

19

20

21

     Hakkasan owns and operates nightclubs in Dubai, London, New York, San Francisco, Miami, and—through Hakkasan LV—Las Vegas. *Id.* at 2.  To support these ventures, plaintiffs operate the websites <hakkasan.com> and <hakkasanlv.com>, and Hakkasan Limited owns federal trademark registrations 3,789,248 and 4,458,604 "for, among other things, bar and restaurant services, nightclubs, and nightclub services," as well as several pending trademark applications. *Id.* at 3.

22

23

24

25

     Plaintiffs allege that on January 12, 2012, defendant Eddie Miller registered domain names <nychakkasan.com>, <lasvegashakkasan.com>, <hakkasannewyears.com>, <hakkasantickets.com>, and <hakkasansouthbeach.com> (Contested Domain Names) with GoDaddy.com, a domain name

26

27

28

---

[1] I refer to "Hakkasan" in the singular for the duration of this order, except as otherwise appropriate.

[2] The filings are identical, and I refer to the Application for Temporary Restraining Order [Doc. 4] for the remainder of this order.

1   registrar.  *Id.* at 4.  Thereafter, Miller linked "at least one of the [Contested Domain Names],

2   <nychakkasan.com>, to a website that offers the domain name for sale for $5,000."  *Id.*  The website

3   contains a link to another website Miller owns, located at <myaftermarket.com>, which encourages

4   third parties to "partner" with him.  *Id.* at 5.  By February 13, 2015, Hakkasan was aware that Miller

5   had linked the remaining four Contested Domain Names to the <myaftermarket.com> site.  *Id.*

6        Hakkasan sues Miller for (1) cybersquatting violations under 15 U.S.C. § 1125(d); (2)

7   trademark infringement and counterfeiting under 15 U.S.C. § 1114; (3) unfair competition under 15

8   U.S.C. § 1125(a); (4) common law trademark infringement; (5) deceptive trade practices under NRS

9   598.0915; and (6) intentional interference with prospective economic advantage.  *Id.* at 7-11.

10  Hakkasan seeks both an *ex parte* temporary restraining order against Miller and a preliminary

11  injunction against Miller's alleged "unauthorized use of [Hakkasan's] marks and [Miller's]

12  registration of the" Contested Domain Names.  Doc. 4 at 2.

13                                    **Discussion**

14        The standards for granting a temporary restraining order and a preliminary injunction are the

15  same.[3]  Under Rule 65(d), "Every order granting an injunction . . . must: (a) state the reasons why it

16  issued; (b) state its terms specifically; and (c) describe in reasonable detail—and not by referring to

17  the complaint or other document—the act or acts restrained or required."[4]  "A preliminary injunction

18  is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear

19  showing*, carries the burden of persuasion."[5]  It is never granted as of right.[6]  As the United States

20

21  _____

22        [3] *See Stuhlbarg International Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839
    n.7 (9th Cir. 2001); *Brown Jordan International, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d

23  1152, 1154 (D. Haw. 2002); *Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del.
    1987) (applying preliminary injunction standard to temporary retraining order issued with notice).

24  Otherwise, a temporary restraining order "should be restricted to serving [its] underlying purpose of
    preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing,
    and no longer."  *Granny Goose Foods, Inc. v. Board of Teamsters & Auto Truck Drivers Local No. 70*,

25  415 U.S. 423, 439 (1974).

26        [4] Fed. R. Civ. Proc. 65(d).

27        [5] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted).

28        [6] *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008).  *See also eBay, Inc.
    v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006).

Supreme Court explained in *Winter v. Natural Resources Defense Council*, the district court inquires whether the movant has demonstrated: (1) a likelihood of success on the merits, (2) irreparable injury, (3) that remedies available at law are inadequate, (4) that the balance of hardships justify a remedy in equity, and (5) that the public interest would not be disserved by a favorable ruling.[7] "Although the restrictions imposed [on a Rule 65(b) request] . . . are stringent, they 'reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'"[8]

The movant must demonstrate actual irreparable harm to obtain pretrial injunctive relief, and in *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, the Ninth Circuit expressed its distrust of alleged harm to business reputation and goodwill that is "grounded in platitudes rather than evidence."[9]  In *Herb Reed*, evidence of harm from the alleged infringement was "an email from a potential customer complaining to [defendant's] booking agent that the customer wanted Herb Reed's" services, instead of a competitor's.[10]  The panel found that this evidence "simply underscore[d] customer confusion, not irreparable harm,"[11] and noted that "[g]one are the days when 'once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue.'"[12]  Instead, the panel explained, "[t]hose seeking injunctive relief" must do more than just state or argue they will suffer irreparable harm, they "must proffer evidence sufficient to

---

[7] *See Winter*, 555 U.S. at 20.  Additionally, when a temporary restraining order is sought, as here, on an *ex parte* basis, the movant must set out: "(A) specific facts in an affidavit or verified compliant [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard; and (B) the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required."

[8] *Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012) (quoting *Granny Goose Foods, Inc. v. Board of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438-39 (1974).

[9] 736 F.3d 1239, 1249 (9th Cir. 2013), *cert. denied*, 2014 WL 1575656 (Oct. 6, 2014).

[10] *Herb Reed*, 736 F.3d at 1250.

[11] *Id.*

[12] *Id.* at 1250 (quoting *Rodeo Collection, Ltd. v. W. Seventh,* 812 F.2d 1215, 1220 (9th Cir. 1987)).

1   establish a likelihood of irreparable harm."[13]

2        The lack of irreparable-harm evidence proves especially problematic for Hakkasan, which
3   candidly admits that it cannot even quantify the number of internet users who have mistakenly used
4   Miller's services and not Hakkasan's, or who will refuse to visit Hakkasan's Las Vegas nightclub
5   due to confusion between <hakkasan.com> and <hakkasanlv.com> and Miller's Contested Domain
6   Names. *See* Doc. 6 at 27.  This is likely because there is no evidence that Miller has taken any steps
7   to compete with Hakkasan's business beyond registering the Contested Domain Names and offering
8   them for sale.  Though Hakkasan claims that Miler "continues to utilize the [Contested Domain
9   Names] and solicit partners to offer counterfeit services to the public in connection with the
10  domains," Doc. 6 at 10-11, there is no indication that Miller has sold any of the domain names,
11  partnered with any other person, or constructed a website designed to create confusion with
12  Hakkasan's business, siphon customers from Hakkasan's business, or otherwise cause Hakkasan
13  irreparable harm.  Speculation of what Miller will do with the domain names is hardly enough to
14  bridge the legal gap between Miller's actions and Hakkasan's irreparable injury.  Instead, these are
15  the sorts of "platitudes" that the *Herb Reed* court warned may show harm Hakkasan *might* suffer,
16  but not harm a party seeking injunctive relief is *likely* to suffer.[14]

17       Hakkasan points to a pair of trial court decisions issued after *Herb Reed* in an attempt to
18  show how its evidentiary proffer suffices, but I find neither citation persuasive.  In *Starbucks Corp.*
19  *d/b/a Starbucks Coffee Company v. Heller*,[15] the court indicated that the presence of "infringing
20  products" in a market could damage business goodwill.[16]  But Hakkasan offers no evidence that
21  Miller has introduced any competing or counterfeit "products" into the marketplace or taken any
22  steps other than to register the domain name and attempt to sell it to third parties.  Similarly, the

23

24

---

25  [13] *Id*. at 1251.

26  [14] *See id.* at 1250.

27  [15] 2014 WL 6685662, at *8 (C.D. Cal. Nov. 24, 2014).

28  [16] *See id.* at *8-9.

court in *Kalologie Franchising LLC v. Kalologie Skincare Medical Group of California*[17] noted that "[a] plaintiff's loss of control over its business reputation resulting from a defendant's alleged unauthorized use of its protected mark during the pendency of an infringement action can constitute irreparable harm justifying injunctive relief" and found irreparable harm where "its mark continued to be used by Defendants' facility through . . . [a] point of sale system and associated website."[18] But there is no indication that Hakkasan's marks are being used in a similar manner by Miller here.

I am aware that *Herb Reed* is a trademark infringement case,[19] and Hakkasan notes that the Ninth Circuit has not explicitly overruled the presumption of irreparable harm in cybersquatting actions once a likelihood of confusion is established.  Doc. 6 at 10.  But I do not construe the holding in *Herb Reed* to be limited to trademark-infringement claims, particularly when the Ninth Circuit has observed noted that "cybersquatting is a form of trademark infringement."[20]  Moreover, courts that have granted injunctive relief in cybersquatting cases post *Herb Reed* have done so on a far more substantial evidentiary basis than Hakkasan offers.  In *Bittorrent, Inc. v. Bittorrent Marketing GMBH*, for example, a trial court issued a permanent injunction because the cybersquatting was "systematic" and intended "to deceive customers into paying for illusory digital download products and services."[21]  And while the court in *Kreation Juicery, Inc. v. Shekarchi* acknowledged that "Plaintiff's loss of control over its business reputation is sufficient to establish a likelihood of irreparable harm,"[22] that court stood on firmer evidentiary footing: the domain-name owner actually operated a business in the same market as the plaintiff and offered products only

---

[17] 2014 WL 953442, at *5 (C.D. Cal. Mar. 11, 2014).

[18] *Id.*

[19] *Herb Reed*, 736 F.3d at 1249.

[20] *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011).

[21] 2014 WL 5773197, at *13 (N.D. Cal. Nov. 5, 2014).  *See also Winter*, 555 U.S. at 32 ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

[22] *Kreation Juicery, Inc. v. Shekarchi*, 2014 WL 7564679, at *12 (C.D. Cal. Sept. 17, 2014).

1  slightly dissimilar from those of the plaintiff.[23]  Hakkasan fails to show that Miller has used the

2  Contested Domain Names in any manner reaching the levels of *Bittorrent* or *Kreation Juicery*, and I

3  decline to find its evidentiary proffer satisfies the standard for establishing irreparable harm on

4  Hakkasan's cybersquatting claim.

5        Because the test for either a temporary restraining order or a preliminary injunction requires

6  satisfaction of all factors, failure to satisfy any one of them—as Hakkasan has failed to demonstrate

7  irreparable harm here—requires the denial of both the temporary restraining order and preliminary

8  injunction.

9  <center>**Conclusion**</center>

10        Accordingly, it is HEREBY ORDERED that Plaintiffs' *Ex Parte* Application for Temporary

11  Restraining Order **[Doc. 4]** and Motion for Preliminary Injunction **[Doc. 6] are DENIED**.

12        DATED: February 23, 2015.

13

14  _____

15  Jennifer A. Dorsey
   United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[23] *See id.*