**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Hakkasan LV, LLC, et al., <br><br> Plaintiffs <br><br> v. <br><br> Eddie Miller, <br><br> Defendant | 2:15-cv-00290-JAD-PAL <br><br> **Order granting in part and denying in part plaintiffs' motion for default judgment and permanent injunction** <br><br> **[ECF 15]** |

Hakkasan LV, LLC and Hakkasan Limited (collectively "Hakkasan") sue Eddie Miller for trademark infringement.[1] Because Miller refuses to defend against Hakkasan's allegations, despite being personally served with process,[2] Hakkasan asks me to enter default judgment against him.[3] Having given Miller an opportunity to respond, which he did not take,[4] and weighed the factors established by the Ninth Circuit in *Eitel v. McCool*, I grant Hakkasan's motion for default judgment but deny its request for a permanent injunction.[5]

**Background**

Hakkasan is a "famous" restaurant and nightclub with multiple locations throughout the world.[6] Its Las Vegas location boasts a modern Cantonese restaurant led by a Michelin-starred chef, a 55,000 square-foot nightclub featuring a two-story waterfall, and a celebrity DJ line-up that

---

[1] ECF 1.

[2] ECF 12.

[3] ECF 15.

[4] ECF 17.

[5] I find this matter suitable for disposition without oral argument. *See* L.R. 78-2.

[6] ECF 1 ¶ 6.

includes Tiesto, Calvin Harris, and Steve Aoki.[7] Since opening its first location in 2001, Hakkasan has used the "HAKKASAN" mark—which is internationally recognized—to promote its business throughout the world.[8] Accordingly, Hakkasan owns several federal trademark registrations with the United States Patent and Trademark Office for the "HAKKASAN" mark.[9]

Nonetheless, Eddie Miller registered various domain names with GoDaddy.com featuring the Hakkasan mark, and he offered to sell them for $5,000.[10] Miller's domain names are <nychakkasan.com>, <lasvegashakkasan.com>, <hakkasannewyears.com>, <hakkasantickets.com>, and <hakkasansouthbeach.com>.[11] Some of the websites invite businesses to "partner with us" and apply to start a business using Hakkasan's mark.[12]

When Hakkasan's attorneys discovered what Miller was doing, they sent him two demand letters by certified and registered mail, asking him to immediately stop infringing on Hakkasan's intellectual property.[13] Because Miller did not respond to the letters, Hakkasan's attorneys decided to reach out to him by phone.[14] Miller asserted that the websites belong to him and maintained that he has done nothing wrong.[15]

Six days later, Hakkasan filed suit, asserting claims for cybersquatting, trademark

---

[7] *Id.*

[8] *Id.* at ¶ 9.

[9] *Id.* at ¶ 7. Hakkasan owns federal trademark registrations (U.S. Reg. Nos. 3,789,248 and 4,458,604) for nightclub, bar, and restaurant services. *Id.* It also has pending trademark applications (U.S. Ser. Nos. 86/183953, 86/183947, 86/183960, and 86/183935) for entertainment, retail, resort, and hotel services. *Id.*

[10] *Id.* at ¶¶ 13, 14.

[11] *Id.*

[12] *Id.* at ¶ 15.

[13] *Id.* at ¶¶ 18, 19.

[14] *Id.* at ¶ 20.

[15] *Id.*

infringement, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) & (d).[16] Hakkasan also alleges state-law claims for trademark infringement, deceptive trade practices, and intentional interference with prospective economic advantage.[17] Despite being served with a summons and copy of the complaint,[18] Miller has failed to appear or defend against Hakkasan's allegations.[19] Hakkasan obtained a clerk's entry of default and now asks me to enter a default judgment and permanent injunction against Miller.

## Discussion

### A.   Default judgment

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true, except those relating to damages.[20] Whether to grant a motion for default judgment lies within my discretion,[21] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[22]

A default judgment generally is disfavored because "[c]ases should be decided upon their merits

---

[16] ECF 1 at 7–8.

[17] *Id.* at 9–10.

[18] ECF 12.

[19] *See id.*; *see also* ECF 20 (noticing Miller's non-opposition to Hakkasan's motion for default judgment).

[20] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[21] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[22] *Id.* at 1471–72.

whenever reasonably possible."[23]

But default judgment is appropriate here. Hakkasan pursued its claims against Miller to prohibit him from continuing to use the infringing "Hakkasan" mark. Miller has failed to participate in this case despite Hakkasan's repeated attempts to include him. Hakkasan's attorneys personally called Miller to discuss the infringing mark before filing suit and served Miller with process. Miller's refusal to participate compounds Hakkasan's injuries by requiring Hakkasan to expend additional resources litigating an uncontested issue: that Miller appropriated Hakkasan's mark for monetary gain on his websites. Without a judgment against Miller, Hakkasan has no other recourse to prevent Miller's further infringement of the "Hakkasan" mark.

The complaint sufficiently sets forth Hakkasan's trademark infringement and related claims under Rule 8's liberal pleading standard. And Hakkasan's claims have substantive merit based on (1) its federal and state trademark registrations for the "Hakkasan" mark, which demonstrate that Hakkasan has a protectable ownership interest in the marks,[24] and (2) screenshots of Miller's websites that display an identical mark.[25] Miller's use of the mark renders the likelihood of confusion "open and shut"[26] because he used an identical mark to sell related goods or services at the same time Hakkasan was advertising its own goods and services on the internet.[27]

---

[23] *Id.* at 1472.

[24] ECF 1 at ¶ 7.

[25] *See, e.g.*, ECF 15 at Ex. A.

[26] *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement.") (quoting 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:20 (4th ed.)).

[27] *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (stating that the three most important *Sleekcraft* factors in the context of the internet are the similarity of the marks, the relatedness of the goods or services, and the simultaneous use of the Web as a marketing channel).

The sum of money at stake in the action is appropriate to the alleged harm.[28] Hakkasan seeks statutory damages under the Lanham Act, which grants the court "wide discretion" in tailoring monetary damages to the alleged harm.[29] And there is no evidence that Miller defaulted due to excusable neglect. Despite being called by Hakkasan's attorneys, served with two demand letters, and personally served with process, Miller has not responded. His refusal to participate renders a decision on the merits "impractical, if not impossible."[30] Entry of default judgment is therefore appropriate.

**B.  Monetary damages**

The Lanham Act authorizes an award up to $2,000,000 for the "willful" infringement of a trademark[31] and between $1,000 and $100,000 for infringing domain names.[32] Statutory damages may be imposed "instead of actual damages" and "as the court considers just."[33] "A finding of willful misconduct under the Lanham Act must be supported by clear and convincing evidence."[34] Relying on subsections (c)(2) and (d), Hakkasan seeks $2,500,000 in statutory damages, arguing that maximum statutory damages are appropriate because Miller willfully infringed upon Hakkasan's

---

[28] *See Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010) (stating that default judgment is appropriate if the sum of money at stake is appropriate to the alleged harm).

[29] *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); *see also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (stating that courts have "wide discretion" in awarding statutory damages under an analogous provision of the Copyright Act).

[30] *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citing *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc*., 259 F.3d 1186, 1194 (9th Cir. 2001).

[31] 15 U.S.C. § 1117(c)(2); *see also Cable/Home Commc'n Corp.*, 902 F.2d at 852 (the imposition of statutory damages is discretionary).

[32] 15 U.S.C. § 1117(d).

[33] 15 U.S.C. § 1117(c)(2), (d).

[34] *Collegenet, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058, 1065 (D. Or. 2007) (citing *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 294 F.3d 227, 229 (1st Cir. 2002).

trademark by registering five domain names.[35]

I recognize that "[s]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed."[36] I am also aware that statutory damages may be imposed "[e]ven for uninjurious and unprofitable invasions," because one of the goals in imposing statutory damages is deterrence.[37] But Hakkasan has done nothing to justify maximum statutory damages against Miller.[38] All I know about Miller is what I can glean from the summons return and complaint: he is a man with an internet connection in Valley Stream, New York, who refuses to participate in this case because he believes he may sell Hakkasan's mark. Nor has Hakkasan attempted to demonstrate why maximum statutory damages would serve the Lanham Act's deterrence goals in the context of this case.

Hakkasan contends that it "would be unable to conduct and discovery" because Miller refused to participate in this case.[39] But this only shows that Hakkasan did not try to propound discovery on Miller, let alone a third party that may have had relevant evidence of his profits—if any. Hakkasan relies on a variety of cases to justify maximum statutory damages; but they are not analogous to this case.[40] The only cognizable argument Hakkasan makes in support of its statutory-damages request is that Miller willfully infringed Hakkasan's marks because Hakkasan's attorney

---

[35] *See* ECF 15 at 19–20.

[36] *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008).

[37] *Philip Morris USA, Inc. v. Castworld Products, Inc*., 219 F.R.D. 494, 501 (C.D. Cal. 2003) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)).

[38] Hakkasan's reference to defendant Adamczyk, who was sued by Hakkasan in a separate matter, detracts from its argument that Miller's conduct warrants maximum statutory damages. *See* ECF 15 at 19.

[39] ECF 15 at 18.

[40] For instance, Hakkasan cites *Sara Lee Corp. v. Bags of New York* as a basis for imposing $2.5 million in statutory damages against a single person. But in that case, the court imposed $750,000 in statutory damages against an individual and his business, which sold counterfeit Coach bags through a showroom and had a factory with "densely packed racks that were fully stocked with several thousand bags." 36 F. Supp. 161, 163. There are no similar infringement facts in this case.

1  explained to him by phone the consequences of his continued infringement.[41]  I find that this conduct
2  justifies statutory damages in a modest amount and therefore award Hakkasan $5,000 under §
3  1117(d) ($1,000 for each of the five infringing websites) plus $5,000 under § 1117(c)(2) for his
4  willful infringement of Hakkasan's mark, for a total of $10,000.

### C. Permanent injunctive relief

The Lanham Act permits a court to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark infringement.[42] A plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[43]  In the wake of the Ninth Circuit's decision in *Herb Reed*, irreparable harm is no longer presumed in trademark cases; it must be demonstrated and the evidence cannot be speculative or conclusory.[44]

Hakkasan argues that a permanent injunction is warranted because it has "no ability to control [its] business reputation and no ability to quantify the harm that [Miller] has done and could continue to do to [its] business reputation and good will if he is not permanently enjoined from using [Hakkasan's] trademark."[45]  As I stated in my prior order denying Hakkasan's motion for a preliminary injunction, this is argument, not evidence or facts.[46]  Nick McCabe's declaration

---

[41] *See* ECF 15 at Ex. 2 ¶ 21.

[42] 15 U.S.C. § 1116; *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006).

[43] *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quotation omitted).

[44] *Herb Reed Enter., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 57 (2014).

[45] ECF 15 at 25.

[46] *See* ECF 9 at 4.  Although unpublished, the Ninth Circuit's decisions in *Titaness Light Shop, LLC v. Sunlight Supply, Inc.* and *Life Alert Emergency Response, Inc. v. LifeWatch, Inc.* shed light on the

confirms that Hakkasan has no evidence.[47] McCabe states that Miller's conduct "will" harm Hakkasan, which "cannot quantify" the number of people who have visited his infringing websites or the number of consumers who will be confused by them.[48] Hakkasan submitted the same declaration in support of its motion for a preliminary injunction, which I denied.[49] I deny its request for a permanent injunction for the same reasons.

**D.    Attorneys' fees**

The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases."[50] Although the term "exceptional" is not defined by the Act, the Ninth Circuit has construed it to include cases, like this one, involving wilful infringement.[51] However, a prevailing party is only entitled to attorneys' fees incurred in connection with Lanham Act claims.[52] Even if it is impossible

---

type of evidence necessary to satisfy the *Herb Reed* standard.  In *Titaness*, the panel reversed the district court's permanent injunction because "[plaintiff] did not establish that Sunlight's customers are aware of the website, would associate the products on the site with marijuana, or would stop purchasing Sunlight products if they mistakenly believed that Sunlight was marketing to marijuana growers." 585 F. App'x 390, 391 (9th Cir. 2014).  By contrast, in *Life Altert*, the panel affirmed the district court's permanent injunction, reasoning:

> A Life Alert employee submitted a declaration reporting numerous and persistent complaints from would-be customers who received robo-calls for what they believed were Life Alert products.  Life Alert also submitted emails and social media posts from consumers. This material substantiates the threat to Life Alert's reputation and goodwill.  This type of harm constitutes irreparable harm, as it is not readily compensable.

601 F. App'x 469, 473–74 (9th Cir. 2015).

[47] ECF 15 at Ex. 1 ¶¶ 20–26.

[48] *Id.*

[49] *See* ECF 9.

[50] 15 U.S.C. § 1117(a).

[51] *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993)).

[52] *Id.*

to make an exact apportionment between Lanham Act claims and non-Lanham Act claims, I have a duty to "make some attempt to adjust the fee award in an effort to reflect an apportionment."[53]

Hakkasan seeks $17,095.60 in attorneys' fees for work conducted on its Lanham Act and state-law claims.[54] Because Hakkasan did not apportion its work between the Lanham Act and state-law claims, I must. In light of the fact that Hakkasan filed three Lanham-Act claims and three state-law claims, I reduce the award by half to a total fee award of $8,547.80. This reduction accounts for the fact that all of Hakkasan's claims are similar but not "so inextricably intertwined that even an estimated adjustment would be meaningless."[55] And it accounts for the lack of novelty, difficulty, and time required to prosecute Hakkasan's claims.[56] The basis for Hakkasan's request for maximum statutory damages was non-existent. Hakkasan appears to have copied and pasted portions of its motion for default judgment from another one of its cases involving defendant Adamczyk.[57] And Hakkasan submitted the same declaration in support of its request for a permanent injunction that I deemed insufficient when ruling on its motion for a preliminary injunction.

**E.    Corrective advertising**

Hakkasan also seeks damages for corrective advertising,[58] arguing that corrective-advertising damages are warranted because it "is difficult to ascertain the number of consumers who were searching for [Hakkasan's] websites and who were confused when they were diverted to [Miller's] websites."[59] Difficulty is one thing; impossibility is another. At the very least, Hakkasan could have subpoenaed GoDaddy.com—which it knows Miller used to register the infringing websites—and

---

[53] *Id.* at 1070.

[54] *See* ECF 16.

[55] *Gracie*, 217 F.3d at 1070.

[56] *See* L.R. 54-16.

[57] See ECF 15 at 19:13.

[58] 15 U.S.C. § 1117(d); *Adray v. Adry–Mart, Inc.*, 68 F.3d 362 (9th Cir.), *amended by* 76 F.3d 984 (9th Cir. 1995).

[59] ECF 15 at 23.

asked for this information.  I therefore decline to award it damages for corrective advertising.

## Conclusion

Accordingly, with good cause appearing and no reason for delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Hakkasan's motion for default judgment **[ECF 15]** is granted in part and denied in part.  I award Hakkasan $10,000 in monetary damages under 15 U.S.C. §§ 1117(c)(2), (d), $8,547.80 in attorneys' fees, and deny its request for a permanent injunction or for corrective-advertising damages.  The clerk of court is directed to enter judgment in favor of plaintiffs and against defendant in the total amount of $18,547.80 and close this case.

Dated this 17th day of March, 2016

_____
Jennifer A. Dorsey
United States District Judge